UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 NOFAL CHOLAG, R.Ph.,
D-2 HASSAN KHREIZAT, R.Ph., a/k/a
SAM KHREIZAT, a/k/a SAMI
KHREIZAT

Defendants.
_____/

Case: 2:20-cr-20145
Judge: Friedman, Bernard A.
MJ: Whalen, R. Steven
Filed: 03-10-2020 At 01:38 PM
SEALED MATTER (DP)

VIO.: 18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 981
18 U.S.C. § 982

## INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare and Medicaid Programs

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare covered different types of benefits and was separated into different program "parts." Medicare Part D subsidized the cost of prescription drugs for Medicare beneficiaries in the United States. Generally, Medicare Part D covered part or all of the costs of prescription drugs dispensed to a Medicare beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

3. In order to receive Medicare Part D benefits, a beneficiary enrolled in one of several Medicare drug plans. Medicare drug plans were operated by private health care insurance companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription drugs.

4. Medicare, through CMS, compensated the Medicare drug plan sponsors for providing prescription drug benefits to beneficiaries. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

5. Qlarant is the Medicare Part D program integrity contractor for CMS under the National Benefit Integrity Medicare Drug Integrity Contract. Qlarant's role is to detect, prevent, and investigate allegations of fraud, waste, and abuse in Part D on a national level.

6. The Michigan Medicaid program ("Medicaid") was a federal and state funded health care program providing benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. CMS was responsible for overseeing the Medicaid program in participating states, including Michigan. Individuals who received benefits under Medicaid were referred to as Medicaid "beneficiaries."

7. Medicaid covered the costs of certain medical services, products, and benefits, including prescription drug benefits, for Medicaid beneficiaries. Generally, Medicaid covered part or all of the costs of prescription drugs dispensed to a Medicaid beneficiary if, among other requirements, the prescription drugs were medically necessary and ordered by a physician.

8. Medicaid paid for covered services either through what was called Medicaid "fee-for-service" or through Medicaid health plans.

9. Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

### The Private Health Insurance Program

10. Blue Cross and Blue Shield of Michigan ("BCBS") was a nonprofit, privately operated insurance company authorized and licensed to do business in the state of Michigan. BCBS provided health care benefits, including prescription drug benefits, to member entities and individuals. Individuals insured by BCBS were referred to as BCBS "members."

11. BCBS had agreements with participating providers, including pharmacies, to furnish medical services to BCBS members.

12. BCBS was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

### Pharmacy Benefit Managers

13. Pharmacy benefit managers ("PBMs") managed prescription drug benefits provided by Medicare (through Medicare drug plan sponsors), Medicaid health plans, and BCBS. PBMs received, adjudicated, and paid claims on behalf of the health care benefit programs.

14. After a pharmacy dispensed a prescription drug to a beneficiary or member, the pharmacy submitted a claim, typically electronically, to the PBM acting

on behalf of the specific health care benefit program. The PBM, on behalf of the health care benefit program, reimbursed the pharmacy, typically electronically, through direct deposits into accounts held, and previously identified, by the pharmacy.

15. CVS Caremark, OptumRx, and Express Scripts were three of several PBMs that managed prescription drug benefits for Medicare (through Medicare drug plan sponsors) and Medicaid health plans. Express Scripts managed prescription drug benefits for BCBS. CVS Caremark processed and adjudicated claims in Arizona. OptumRx and Express Scripts processed and adjudicated claims outside the state of Michigan.

### The Pharmacy

16. Universal Pharmacy L.L.C. ("Universal") was a pharmacy and Michigan limited liability company located at 4600 E. 14 Mile Rd., Ste. 2, Warren, MI 48092.

### The Defendants

17. Defendant NOFAL CHOLAG, a resident of Macomb County, Michigan, was a licensed pharmacist in Michigan and the owner and pharmacist-in-charge of Universal.

18. Defendant HASSAN KHREIZAT, a resident of Wayne County, Michigan, was a licensed pharmacist in Michigan and an owner and pharmacist at Universal.

## Overview of the Scheme

19. The Defendants and others engaged in a scheme and artifice to defraud Medicare, Medicaid, and BCBS by submitting and causing the submission of false and fraudulent claims through interstate wires to Medicare, Medicaid, and BCBS drug plan sponsors through Universal. The false and fraudulent claims consisted of prescriptions that were submitted as claims to Medicare, Medicaid, and BCBS drug plan sponsors through Universal as if they were dispensed to beneficiaries but in fact were never dispensed to those beneficiaries.

20. Over the course of the scheme, which began in or about 2011 and continued through approximately 2018, CHOLAG and KHREIZAT submitted or caused to be submitted approximately $1.5 million in false and fraudulent claims. CHOLAG and KHREIZAT personally profited from their participation in the scheme by receiving fraud proceeds for the personal use and benefit of themselves and others directly or indirectly through interstate wires.

## Object and Purpose of the Scheme

21. The object and purpose of the conspiracy was for NOFAL CHOLAG, HASSAN KHREIZAT, and others to unlawfully enrich themselves and others by,

6

among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS through Universal; (b) concealing and causing the concealment of the submission of false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and the receipt and transfer of the proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of the defendant and others.

### Description of the Scheme

22. NOFAL CHOLAG and HASSAN KHREIZAT maintained national provider identifiers for Universal in order to submit claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS.

23. NOFAL CHOLAG and HASSAN KHREIZAT, on behalf of Universal, entered into pharmacy provider agreements with CVS Caremark and Express Scripts, among other PBMs.

24. NOFAL CHOLAG, HASSAN KHREIZAT, and others submitted, and caused the submission of, false and fraudulent claims to Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS via interstate wires and on behalf of Universal for prescription drugs that were not dispensed, at times because the beneficiaries were deceased, and often medically unnecessary.

25. False and fraudulent claims that NOFAL CHOLAG, HASSAN KHREIZAT, and others electronically submitted, and caused to be electronically submitted, to Medicare, Medicare drug plan sponsors, Medicaid, and Medicaid health plans were processed and adjudicated electronically by CVS Caremark, OptumRx, and Express Scripts, among other PBMs, outside the state of Michigan. False and fraudulent claims that NOFAL CHOLAG, HASSAN KHREIZAT, and others electronically submitted and caused to be electronically submitted to BCBS were processed and adjudicated electronically by Express Scripts outside the state of Michigan.

26. Qlarant conducted an invoice review for Universal. Qlarant compared Universal's purchases of certain medications to its Medicare and Medicaid claims data for those same medications during the approximate time period of January 2013 through January 2016. Qlarant concluded that Universal's inventory of prescription drugs was not sufficient to support its claim submissions to Medicare and Medicaid. Based upon the shortage detected, Qlarant concluded that Medicare and Medicaid paid Universal approximately $1,405,154.53 for medications that Universal did not have sufficient inventory to dispense.

27. NOFAL CHOLAG and HASSAN KHREIZAT caused an approximate loss of approximately $1.4 million to Medicare and Medicaid because of the false

and fraudulent claims that NOFAL CHOLAG and HASSAN KHREIZAT submitted and caused to be submitted.

28. During the approximate time period of January 2013 through January 2016, NOFAL CHOLAG and HASSAN KHREIZAT caused an approximate loss of approximately $98,813.54 to BCBS because of the false and fraudulent claims that NOFAL CHOLAG and HASSAN KHREIZAT submitted and caused to be submitted.

29. NOFAL CHOLAG and HASSAN KHREIZAT caused the transfer and disbursement of illicit proceeds derived from the fraudulent scheme to themselves and others.

**COUNT 1**
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

30. Paragraphs 1 through 29 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

31. From at least in or around 2013, and continuing through at least 2018, the exact dates being unknown to the Grand Jury, in Wayne County, and Macomb County, in the Eastern District of Michigan, and elsewhere, NOFAL CHOLAG, HASSAN KHREIZAT, and others, known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate, and agree to commit certain offenses against the United States, that is:

(a) to violate Title 18, United States Code, Section 1347, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, Medicare drug plan sponsors, Medicaid, Medicaid health plans, and BCBS, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services; and

(b) to violate Title 18, United States Code, Section 1343, that is, to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

## Purpose of the Conspiracy

32. The object and purpose of the conspiracy is described in Paragraph 21 and is re-alleged and incorporated by reference as though fully set forth herein.

## Manner and Means of the Conspiracy

33. In furtherance of the conspiracy and to accomplish its object and purpose, the manners and means that were used are described in Paragraphs 22 through 29 and are re-alleged and incorporated by reference as though set forth fully herein.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

34. Paragraphs 1 through 29 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

35. Beginning in 2011 and continuing through at least 2018, in Macomb and Wayne Counties, in the Eastern District of Michigan, and elsewhere, NOFAL CHOLAG and HASSAN KHREIZAT, as specified below, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

36. Paragraph 21 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

37. Paragraphs 22 through 29 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

38. On or about the dates set forth below, in Wayne and Macomb Counties, in the Eastern District of Michigan, NOFAL CHOLAG, HASSAN KHREIZAT, and others did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of

and payment for health care benefits, items, and services, in that NOFAL CHOLAG, HASSAN KHREIZAT, and others submitted and caused the submission of false and fraudulent claims for payment and falsely represented that Universal provided prescription medications to Medicare and Medicaid beneficiaries, as described in Paragraphs 22 to 29 of this Indictment, with each execution set forth below forming a separate count:

| Count | Defendant(s) | Pharmacy | Bene. | Approx. Date of Alleged Bill | Description of Prescription Medication | Approx. Paid Amount |
|---|---|---|---|---|---|---|
| 2 | D-1 NOFAL CHOLAG D-2 HASSAN KHREIZAT | Universal | P.H. | 1/22/2016 | Tudorza | $307.26 |
| 3 | D-1 NOFAL CHOLAG D-2 HASSAN KHREIZAT | Universal | M.W. | 4/28/2017 | Januvia | $388.66 |
| 4 | D-1 NOFAL CHOLAG D-2 HASSAN KHREIZAT | Universal | M.W. | 4/28/2017 | Benicar | $272.21 |
| 5 | D-1 NOFAL CHOLAG D-2 HASSAN KHREIZAT | Universal | M.W. | 4/28/2017 | Vitamin D3 | $11.26 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## CRIMINAL FORFEITURE

39. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging criminal forfeiture to

13

the United States of America of certain property in which NOFAL CHOLAG and HASSAN KHREIZAT have an interest, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), and 28 U.S.C. § 2461.

40. Upon conviction of violations alleged in this Indictment, NOFAL CHOLAG and HASSAN KHREIZAT shall forfeit to the United States: (a) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violations, pursuant to 18 U.S.C. § 981(a)(1)(C), together with Title 28 U.S.C. § 2461, and (b) any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7).

41. *Money Judgment*: The government shall also seek a forfeiture money judgment from the defendants for a sum of money representing the value of the property subject to forfeiture.

42. *Substitute Assets*: If the property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

    a.) cannot be located upon the exercise of due diligence;

    b.) has been transferred or sold to, or deposited with, a third party;

    c.) has been placed beyond the jurisdiction of the Court;

    d.) has been substantially diminished in value; or

    e.) has been commingled with other property that cannot be subdivided without difficulty;

15

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of the defendants, up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
Grand Jury Foreperson

MATTHEW SCHNEIDER
UNITED STATES ATTORNEY


*s/Regina McCullough*
REGINA MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan



*s/Malisa Dubal*
MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice



*s/Howard Locker*
HOWARD LOCKER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice



*s/Claire Sobczak*
CLAIRE SOBCZAK
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

Dated: March 10, 2020

ORIGINAL

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: |

**Case Title:** USA v. Nofal Cholag, et al.

**County where offense occurred :** Wayne County and Macomb County

**Check One:**  ☒ Felony    ☐ Misdemeanor    ☐ Petty

 ✓  Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:                    ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____  **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

March 10, 2020
    Date

*/s/ Howard Locker*
Howard Locker
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 202-878-9409
Fax:    313-226-2621
E-Mail address: Howard.Locker@usdoj.gov
Attorney Bar #: NY- 5035514, CT- 433489

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.